**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.  08-CR-74-TCK |
| | ) | |
| JAMON ARMIN POINTER, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant's Motion to Suppress Evidence and Statements (Doc. 14) ("Motion"), wherein Defendant Jamon Pointer ("Jamon") objects to "the search of his person and automobile, and any statements he made during or after the search." (Mot. to Suppress 1.)  On July 14, 2008, the Court conducted an evidentiary hearing at which ATF Agent Brian McFadden ("McFadden") was the only witness.  Following the hearing, the Court ordered supplemental briefing, which was submitted by the parties on July 23 and 25, 2008.  Pursuant to the Motion, Jamon seeks to suppress:  (1) $133.00 cash found on his person ("Cash"), (2) 63.28 grams of cocaine seized from his vehicle ("Cocaine"), which forms the basis of Count Two of the Indictment, and (3) a statement made by Jamon that he "messed up," which was made in the presence of law enforcement officers ("Statement").[1]

I.      **Background**

On March 5, 2008, Tulsa Police Officer Jeff Henderson ("Henderson") applied for and

---

[1]  At the hearing and in his supplemental brief, Jamon focused his arguments on search of his vehicle.  However, in his Motion, Jamon also objected to the search of his person and admission of the Statement.  The Government addressed all three issues in its briefs, indicating that it seeks to admit the Cash, Cocaine, and Statement at trial. Accordingly, the Court will address all three issues.

received two search warrants (the "Warrant(s)"):  (1) for the residence of Jamon, located at 2727 S. 124th East Ave., Tulsa, Oklahoma ("Jamon's residence"); and (2) for the residence of Jamon's brother, Lindell Pointer, Sr. ("Lindell"), located at 7825 E. 22nd Place, Tulsa, Oklahoma ("Lindell's residence").  In the caption of the Warrants, Jamon and Lindell are both listed as Defendants.  The Warrant for Jamon's residence states that there is probable cause to believe that certain contraband:

> is located at, and is now being kept, possessed, and concealed by the above named defendant,[2] or by other persons in whose possession he has placed it for the purpose of concealment, at or upon or within a certain vehicle and/or house, building or premises, the curtilage thereof and the appurtenances thereunto belonging, in Tulsa County, Oklahoma, described as follows: [real property description of Jamon's residence].  The affidavits being positive that the above described property is on the person, or in the place to be searched and there being a likelihood that said property above described will be destroyed, moved, or concealed.

(Def.'s Ex. 3 (footnote added).)  The Warrant for Jamon's residence further states:

> YOU ARE THEREFORE COMMANDED . . . to make search of *said person, vehicle, and/o*r house, building and premises, the curtilage thereof and the appurtenances thereunto belonging for the described property . . . .

(*Id.* (emphasis added).)  The Warrant for Lindell's residence is identical except it contains the real property description of Lindell's residence.  (Ct.'s Ex. 1.)[3]  There is no description within the Warrants of the "vehicle" to be searched.

Each Warrant is supported by an Affidavit for Search Warrant prepared by Henderson ("Affidavit").  The Affidavit, which is based on information provided by a reliable confidential informant ("RCI"), provides:

---

[2]  The term "defendant" is singular despite the fact that both Jamon and Lindell are listed as Defendants in the caption of the Warrant.

[3]  Following the hearing, the Court ordered the Government to provide copies of the Warrant and accompanying affidavit related to Lindell's residence.  These were marked as Court's Exhibits 1 and 2 and made part of the hearing record.

Your affiant further states in the past 72 hours the mentioned RCI has been to two residences and observed two black males, known to the RCI as "Jamon Pointer", aka: "JP" and his bother only known as "LP" who were selling cocaine out of the residences of 2727 South 124th East Avenue [Jamon's residence] and 7825 East 22nd Place [Lindell's residence] within the past 72 hours.

(Def.'s Ex. 4.)   The Affidavit states that the RCI "has observed Jamon Pointer and LP conduct drug transactions from both residences within the past 72 hours."   (*Id.*)   The Affidavit further provides that Henderson and other officers conducted surveillance of both residences and observed short-term traffic to and from the residences to be searched.   (*Id.*)   The Affidavit was not attached to either of the Warrants or incorporated therein by reference.

On March 7, 2008, Henderson, McFadden, and other officers conducted surveillance on Lindell's residence.   At approximately 12:50 p.m., Henderson saw a white Cadillac bearing Oklahoma tag 236-ZWY ("Lindell's vehicle") approach a stop sign near Lindell's residence.   The officers identified the driver as Lindell.   Lindell did not come to a complete stop, and Henderson initiated a traffic stop.   Henderson ordered Lindell to exit his vehicle and sit in the police car. Once there, Henderson arrested Lindell for not having a driver's license and handcuffed him.

The officers then proceeded to Lindell's residence to execute the Warrant for Lindell's residence.   Henderson was driving a patrol car, and McFadden was driving Lindell's vehicle.   As officers were approaching Lindell's residence, they observed a white Cadillac bearing Oklahoma tag WEV-237 ("Jamon's vehicle") pull into the driveway of Lindell's residence.   The officers identified the driver as Jamon.   Officers parked their vehicles near the front of Lindell's residence. By this time, Jamon had exited the vehicle and was standing next to the driver's side door.   Jamon's three-year old son was seated in the front passenger seat of the vehicle.

At this point, McFadden approached Jamon, conducted a pat-down search of his person, and

3

ordered him to sit on the bumper of Jamon's vehicle. McFadden found the Cash on Jamon's person but nothing else. McFadden then searched the front compartment of Jamon's vehicle, including the front floorboards and the glove compartment. McFadden found the Cocaine in the glove compartment. After finding the Cocaine, McFadden placed Jamon under arrest and handcuffed him. Lindell, Jamon, and Jamon's son were taken inside Lindell's residence while officers searched Lindell's residence. Once inside the residence, Jamon used a telephone and stated within earshot of one or more of the officers that he had "messed up."

## II.    Burden of Proof

In general, the "proponent of a motion to suppress bears the burden of proof." *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994). However, "[e]vidence seized pursuant to a warrantless search, once questioned, must be suppressed unless the search and seizure come within an exception to the Fourth Amendment requirement of a warrant." *United States v. Sporleder*, 635 F.2d 809, 813 (10th Cir. 1980). Thus, in the event of a warrantless search, the burden is on the Government to "show the need for" an exception to the warrant requirement. *Id.*; *see also United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993).

## III.    Search of Jamon's Vehicle /Suppression of the Cocaine

Jamon seeks to suppress the Cocaine found in his vehicle, which forms the basis of Count Two of the Indictment. Jamon contends that the search of his vehicle violated his Fourth Amendment rights because (1) the search was not authorized by either of the Warrants, and (2) the search was not authorized by any exception to the Fourth Amendment warrant requirement.

4

A.    <u>Was the Search of Jamon's Vehicle Authorized by the Warrant for Lindell's Residence?</u>

At the time the officers searched Jamon's vehicle, they had served Lindell with the Warrant for search of Lindell's residence. The Warrant provided a specific description of Lindell's residence and authorized search of "*said* person, *vehicle* and/or house, building and premises, the curtilage thereof and the appurtenances thereunto belonging for the described property." (Ct.'s Ex. 1 (emphasis added).) The Warrant included Jamon as a named Defendant, and Jamon was clearly a target of the investigation. However, the Warrant did not provide a physical description or license tag number for Jamon's vehicle or any other vehicle. Similarly, the Affidavit supporting the Warrant did not include any information regarding the vehicles owned by Lindell or Jamon, such as a physical description, tag number, or other identifying information. Therefore, the descriptive word "said" in the Warrant, at least in relation to the word "vehicle," had no meaning whatsoever. Due to the lack of specificity regarding any particular vehicle to be searched, the Warrant for Lindell's residence did not expressly authorize search of Jamon's vehicle. *See United States v. Grubbs*, 547 U.S. 90, 97 (2006) (explaining that Fourth Amendment requires that place to be searched and persons or things to be seized must be "particularly described" in a warrant).

Because it was not specifically described in the Warrant for Lindell's Residence, the search of Jamon's vehicle is subject to the general rules governing searches of vehicles found on premises that are covered by a search warrant. Under Tenth Circuit law, a general "premises" search warrant authorizes search of only "those automobiles either actually owned or under the control and dominion of the premises owner or, alternatively, those vehicles which appear, based on objectively reasonable indicia present at the time of the search, to be so controlled." *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990). In this case, the "owner" of the premises being

searched was Lindell.  The officers had no reason to believe Jamon's vehicle was owned or under the control of Lindell because (1) the officers saw Jamon pull into the driveway of Lindell's residence, and (2) the officers were already in possession of Lindell's vehicle.  Although Lindell and Jamon's vehicles were identical white Cadillacs, there is not evidence of any confusion by the officers as to which Cadillac belonged to which brother.  In other words, the officers did not mistakenly believe they were searching a vehicle "owned or controlled by" Lindell when they searched Jamon's vehicle.  *See Gottschalk*, 915 F.2d at 1462 (upholding search of vehicle made pursuant to "premises" search warrant because officers acted reasonably in assuming that owner of premises had "control" over car that had been parked on premises "for some time") (specifying that searched vehicle "was not driven onto the curtilage during the search").  Accordingly, Jamon has met his burden of proving that search of his vehicle was not authorized pursuant to the Warrant for Lindell's residence.[4]

      B.    <u>Was the Search of Jamon's Vehicle Authorized by the Warrant for Jamon's Residence?</u>

    At the time officers searched Jamon's vehicle, they had not served him with the Warrant for

---

[4] In *Gottschalk*, the court made a specific point that "[n]either [the defendant] nor his vehicle were mentioned in the warrant, and [the defendant] was not a target of the investigation or the warrant." *Gottschalk,* 915 F.2d at 1460.  In this case, the word "vehicle," albeit undescribed, does appear in the Warrant, and Jamon was a target of the investigation.  Therefore, in its order for supplemental briefing, the Court ordered the parties to address "[w]hether Defendant being named in the search warrant for Lindell Pointer's residence affects the officers' authority to search Defendant and/or his vehicle prior to or during execution of the search warrant for Lindell Pointer's residence."  In its supplemental brief, the Government concluded that "it appears that *Gottschalk* would not allow the search of the defendant's vehicle during the execution of the search warrant unless it was specifically described."  (Gov't's Supp. Br. 2.)  The Court concurs with the Government's concession.

search of his own residence or started the process of executing such Warrant.[5]  Officers were, however, in possession of the Warrant because they planned to search Jamon's residence immediately after they searched Lindell's residence.  The Court assumes, for purposes of argument only, that the unserved Warrant for Jamon's residence could potentially authorize the challenged vehicle search.  *See United States v. Katoa*, 379 F.3d 1203, 1205 (10th Cir. 2004) (explaining that "there is no constitutional requirement that an officer present a warrant prior to a search" and that failing to show a warrant prior to a search may be reasonable in some circumstances).

Even assuming this unserved Warrant could have some effect, the Warrant for Jamon's residence did not authorize search of Jamon's vehicle under the circumstances presented.  The Warrant for Jamon's Residence also did not provide any description or identifying information as to Jamon's vehicle and therefore did not authorize a general search of Jamon's vehicle, regardless of where the vehicle was found.  Instead, the Warrant authorized search of Jamon's vehicle only if such vehicle was (1) located on the premises described in the Warrant (Jamon's Residence), and (2) searched pursuant to the "premises" search authorized by the Warrant and the Tenth Circuit's decision in *Gottschalk,* which allows search of those vehicles owned or controlled by the premises owner.  That is not what occurred in this case because the search of Jamon's Vehicle took place during the execution of the Warrant for Lindell's Residence.  Accordingly, the Court finds that Jamon has met his burden of proving that search of his vehicle was not authorized pursuant to the Warrant for his own residence.[6]

---

[5]  Officers executed the Warrant for search of Jamon's residence later that day and uncovered evidence that forms the basis of other charges in this case.

[6]  The Court ordered the parties to brief the question of "[w]hether Defendant being named in the search warrant for Defendant's own residence affects the officers' authority to

C.     Did the Vehicle Search Qualify for an Exception to Warrant Requirement?

"[W]arrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement."  *United States v. Edwards*, 242 F.3d 928, 937 (10th Cir. 2001).  In its supplemental brief, the Government argues that search of Jamon's vehicle was justified as (1) a search incident to a lawful arrest, citing *Chimel v. California*, 395 U.S. 752 (1969), and (2) a search pursuant to an investigative detention during which officers are authorized to take steps necessary to secure their safety, citing *United States v. Gama-Bastidas*, 142 F.3d 1233 (10th Cir. 1998).

### 1.     *Search Incident to Lawful Arrest*

"'[A] lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area.'"  *Edwards*, 242 F.3d at 937 (quoting *Chimel*, 395 U.S. at 762)).  However, Jamon was not under arrest at the time his vehicle was searched.  According to McFadden, Jamon was detained and was sitting on the bumper of the vehicle at the time of the search.  Jamon was not arrested or handcuffed until *after* McFadden located the Cocaine in the glove compartment of Jamon's vehicle.  Therefore, this case does not present an ordinary "search incident to arrest."  Nonetheless, although not cited by the Government, there is Tenth Circuit authority holding that "[a] warrantless search *preceding* an arrest is a legitimate search incident to arrest as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search."  *United States v. Anchondo*, 156 F.3d

search Defendant and/or his vehicle prior to or during execution of the search warrant for Lindell Pointer's residence."  In its supplemental brief, the Government stated that "it could find no authority for this question" and referred the Court to its other responses.  Therefore, the Government essentially conceded that the vehicle search was not authorized by the Warrant for Jamon's residence.

1043, 1045 (10th Cir. 1998) (emphasis added); *see also United States v. McKissick*, 204 F.3d 1282, 1296 (10th Cir. 2000).[7]  In explaining the origins of this unique application of the "search incident to arrest" doctrine, the Tenth Circuit stated that "a search cannot precede an arrest and then serve as part of its justification."  *United States v. Rivera*, 867 F.2d 1261, 1264 (10th Cir. 1989); *see also United States v. Allen*, 986 F.2d 1354, 1357 (10th Cir. 1993).

"Arrests must be based on probable cause.  Probable cause to arrest exists *when an officer has learned of facts and circumstances* through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *Anchondo*, 156 F.3d at 1045 (emphasis added).  In this case, there is no evidence that McFadden witnessed Jamon commit any traffic violation prior to pulling into the driveway or that he witnessed Jamon engage in any suspicious behavior when Jamon exited his vehicle.  The search of Jamon's person uncovered only $133.00, which is not an unreasonable or suspicious amount of cash.  Further, there is no evidence that narcotics or other contraband had been discovered on Lindell's person or in his vehicle, which would have corroborated the officers' suspicions that Lindell and Jamon were jointly engaged in narcotics trafficking.  Although Lindell had been arrested at the time of the search of Jamon's vehicle, Lindell was arrested for a routine traffic violation.  Thus, at the time McFadden searched Jamon's vehicle, officers had not uncovered any new facts or circumstances that would provide a legitimate basis for Jamon's arrest.  This lack of evidence

_____

[7]  Although this authority was not cited by the Government, the Government argued that officers "had probable cause to arrest him, thereby allowing them to search the vehicle incident to that arrest." (Gov't's Supp. Br. 2.)  Thus, it appears the Government seeks to invoke this line of Tenth Circuit cases.  Jamon argued "[s]ince there was no valid arrest before the car search, there can be no use of the search-incident-to-arrest exception to the warrant requirement of the Fourth Amendment."  (Def.'s Supp. Br. 21.)  Therefore, the Court was without the benefit of argument regarding application of this authority to the facts presented.

generally distinguishes this case from Tenth Circuit cases upholding warrantless searches preceding an arrest as searches "incident to" a lawful arrest.  *See Anchondo*, 156 F.3d at 1045 (officers had probable cause to arrest prior to search because canine alerted on defendant's car); *Allen*, 986 F.2d at 1357 (officers had probable cause to arrest prior to search based on discovery of cocaine on defendant's companion, which "verified the tip" of a reliable confidential informant) (reasoning that informant had "correctly described the suspects and predicted their location and the crack cocaine that they would be carrying"); *McKissick*, 204 F.3d at 1297 n.5 (officers had probable cause to arrest prior to search based on circumstances corroborating that defendant was involved in a shooting, including a correct description of the defendant's vehicle, empty shell casings in the defendant's vehicle, the defendant's companion's gunshot wound, and the defendant's own physical condition). In this case, at the time of the challenged search, nothing had occurred on the scene that provided probable cause to arrest Jamon.  Instead, officers had merely encountered both suspects in their vehicles engaging in unsuspicious activities, namely, pulling into a family member's driveway (Jamon) and rolling a stop sign (Lindell).

The Government argues that probable cause for Jamon's arrest nonetheless existed based solely on the information contained in the Affidavit submitted by Henderson to obtain the Warrants. However, the Government did not present specific evidence regarding whether and to what extent these facts were within McFadden's knowledge at the time of the arrest.  Henderson, who prepared the Affidavit, was not involved in the vehicle search or Jamon's arrest.  Nor was the Affidavit attached to or incorporated into the Warrant.  McFadden testified that he had looked at a photograph of Lindell and received a physical description of Jamon prior to execution of the Warrants. McFadden also testified that he was aware that the Warrants were based on information provided

10

to Henderson by a RCI.  It was not made clear at the hearing, however, whether McFadden was specifically familiar with the facts and circumstances set forth in the Affidavit at the time he made the arrest or whether he was familiar with such facts at the time of his testimony.  Therefore, in this case, there was not sufficient evidence presented that McFadden had "learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested."  *See Anchondo*, 156 F.3d at 1045 (emphasis added).

In addition, the only evidence presented at the hearing regarding the "justification" for Jamon's arrest related to McFadden's discovery of the Cocaine.  This makes it difficult for the Court to conclude that the fruits of the search (the Cocaine) did not serve as part of the "justification" for Jamon's arrest. *See Rivera*, 867 F.2d at 1264 (stating that "a search cannot precede an arrest and then serve as part of its justification"); *see also Smith v. Ohio*, 494 U.S. 541, 543 (1990) ("[J]ustifying the arrest by the search and at the same time the search by the arrest just will not do.") (internal citations and quotations omitted); *Rawlings v. Kentucky*, 448 U.S. 98, 111 n.6 (1980) (indicating the fruits of a search must not be the basis for the probable cause for a simultaneous arrest).  McFadden did not testify as to whether Jamon's arrest was also "justified" by facts set forth in the Affidavit or, as explained above, his specific awareness of these facts.[8]  Further, the Government presented no evidence that McFadden had any intention to arrest Jamon prior to discovery of the Cocaine.[9]

---

[8]  The "search incident to arrest" exception is a newly asserted theory, and it was not discussed or addressed at the hearing.  This explains the lack of a meaningful evidentiary record regarding this potential exception to the warrant requirement.

[9]  Although one Tenth Circuit case indicates that "[w]hether or not the officer intended to actually arrest the defendant at the time of the search is immaterial," *see Anchondo*, 156 F.3d at 1045, such case was decided before *McKissick*, which indicates that such evidence may at least

In sum, the Government did not meet its burden of proving that the facts presented are sufficiently similar to cases holding that a warrantless search *preceding* an arrest may be upheld as a search incident to that arrest.  Specifically, the Government did not present evidence that facts and circumstances within McFadden's knowledge presented a legitimate basis for Jamon's arrest, separate and apart from discovery of the Cocaine.  In addition, McFadden's testimony was clear that the fruits of the vehicle search served as justification for the arrest.  The Government has therefore not met its burden of proving that search of the vehicle was justified as a search incident to a lawful arrest.[10]

## 2.    *Search to Ensure Officer Safety During Investigative Detention*

The Government next argues that, "at the very least," the facts contained in the Affidavit "allowed the officers to place the defendant in an investigative detention, where 'police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo.'" (Gov't's Supp. Br. 3 (quoting *Gama-Bastidas*, 142 F.3d at 1240).)  To determine if the search of Jamon's glove compartment qualifies for this exception to the warrant requirement, the Court must conduct a two-step inquiry:  (1) was the investigative detention "justified at its inception;" and (2) was the challenged search "reasonably related in scope to the circumstances which justified the

---

be relevant to the Court's analysis.  *See McKissick*, 204 F.3d at 1297 n.5 (explaining that "Officer Patten testified he had already decided to arrest [the defendant] in connection with the shooting").

[10]  Because the Court finds the vehicle search was not "incident to" an arrest, the Court does not reach the next sequential question of whether the glove compartment was within Jamon's "immediate control" while he was seated on the bumper of his vehicle.  *See Edwards*, 242 F.3d at 937 (holding that "a search incident to arrest may extend only to the area within the suspect's 'immediate control,' as that is the only area from which the suspect could draw a weapon or damage evidence").

interference in the first place." *Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1028 (10th Cir. 1997). As to the second prong, the Tenth Circuit has stated that "officers may take reasonable steps to protect themselves if the circumstances reasonably warrant such measures." *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993); *see also Gama-Bastidas*, 142 F.3d at 1240 ("Police officers are authorized to take reasonable steps necessary to secure their safety and maintain the status quo during a stop."). For purposes of this Motion, the Court assumes that the investigative detention, which consisted of placing Jamon on the bumper of his vehicle, was "justified at its inception." As explained below, however, the Court concludes that search of the glove compartment was not reasonably necessary to protect officer safety under the circumstances presented.

When McFadden approached Jamon, Jamon had already exited his vehicle. McFadden immediately patted him down and did not find any weapons or narcotics. McFadden then told Jamon to sit on the bumper of the vehicle. There is no evidence that Jamon resisted McFadden in any way, made any sudden movements, or made any threatening verbal remarks. McFadden did not testify that he had any fear or apprehension that Jamon would get up from a seated position on the bumper and retrieve a weapon from an interior compartment of the car. Instead, McFadden testified that he searched the vehicle because (1) he thought the search was authorized by the Warrants, and (2) in order to protect Jamon's three-year old son, who was seated in the passenger seat of the vehicle. McFadden testified that he wanted the child to have a "secure area" to sit until officers were able to get him inside the house. McFadden was concerned that the child could reach into the glove box or other areas in the interior of the vehicle. This case presents a unique situation where the officer was not concerned about his own safety but was attempting to make the car a safe waiting area for the three-year old passenger.

13

The Court concludes that search of the glove compartment under these circumstances was not a "reasonable step" taken to ensure officer or public safety. Even assuming the three-year old's access to the glove compartment presented a safety risk, there was simply no need to conduct a warrantless search of the vehicle because the child could have been removed from the vehicle. The action chosen by the officer, which included a search of a compartment within the vehicle, was not reasonably related or necessary to complete the investigative detention of Jamon. Jamon was cooperative, was not indicating any intent to reach inside the vehicle for a weapon, and there was no potential danger that justified search of an interior compartment of Jamon's vehicle. The totality of the circumstances presented – that Jamon had been frisked for weapons, was cooperating, and was seated away from the searched area of the vehicle and that Lindell was arrested – distinguish this case from the Government's cited cases, all of which presented a more significant risk to officer safety. *See Gallegos*, 114 F.3d at 1028 (holding that officer's use of "arm bar" maneuver did not exceed scope of *Terry* stop where defendant did not respond to officer questioning and had "jerked away" from officers' grasp three separate times, such that officers could not confirm or dispel their suspicions that he was a reported prowler); *Perdue*, 8 F.3d at 1462 (defendant pulled his car onto large piece of rural property used for cultivating marijuana during execution of a search warrant for the property) (holding that use of drawn weapons and ordering defendant out of car and onto ground was reasonable because officers knew guns had been found on property and because these steps were justified as a "means of neutralizing the potential danger"); *Gama-Bastidas*, 142 F.3d at 1240 (police had received tip that Dodge Neon was transporting cocaine and that "one of the occupants of the vehicle may have a firearm") (holding that pat-down search of the defendant for weapons was justified based on the tip that occupants were armed, the probable cause to believe occupants were

14

transporting cocaine, and that the fact that stop was executed at night on the side of a highway).

Accordingly, search of Jamon's vehicle does not qualify for the exception allowing reasonable actions to ensure safety during an investigative detention.

### III.     Search of Jamon's Person/Suppression of the Cash

The Cash was seized pursuant to a pat-down search of Jamon's person conducted by McFadden while Jamon was standing outside his vehicle.  This search was prior to discovery of the Cocaine found in Jamon's vehicle and prior to Jamon being placed under arrest.  Jamon contends this search violated the Fourth Amendment because it was a warrantless search that did not satisfy any exception to the warrant requirement.  The Government argues that the pat-down search of Jamon's person did not violate the Fourth Amendment because: 1) it was expressly authorized by the Warrants; and (2) it was based on the officers' "reasonable suspicion" that Jamon was "armed and presently dangerous."[11]

The caption of the Warrants provided:

The State of Oklahoma
vs.
Jamon Pointer AKA: "JP" B/M
Lindell Pointer AKA:  "LP" B/M

(Def.'s Ex. 3.)  In the final paragraph, the Warrants commanded officers "to make search of said person . . . within Ten days."  (*Id.*)  In addition, the Warrants provided that "[t]he affidavits being

---

[11]  In its original response to the Motion, the Government contended that search of Jamon's person was constitutionally permissible because he was lawfully detained as an "occupant" of the searched premises pursuant to *Michigan v. Summers*, 452 U.S. 692 (1981). However, in its supplemental brief, the Government conceded that a person pulling into a driveway who does not live at the residence cannot be considered an "occupant" of the searched premises.  (Gov't's Supp. Br. 6.)  The Government further conceded that, even assuming Jamon's detention was lawful, this does not necessarily lead to the conclusion that a search of his person was lawful.  (*Id.* 6-7.)  Therefore, the Court need not address this argument.

15

positive that the above described property is *on the person*, or in the place to be searched and there being a likelihood that said property above described will be destroyed, moved, or concealed." (*Id.* (emphasis added).)  Although "person" is listed in the singular, the Court construes the Warrants to authorize search of the "person" of both Defendants listed, including Lindell and Jamon.[12]  Unlike the word "vehicle," which has no description or other indicia that would point an officer to a particular vehicle, the word "person" is described with particularity by virtue of Jamon being listed as a named Defendant in the caption of the Warrants.  Therefore, this case does not present "particularity" problems that arise when warrants are not specific as to what "person" may be searched.  *See, e.g., Owens v. Lott*, 372 F.3d 267, 274-75 (4th Cir. 2004) (explaining "difficulties presented by the inclusion of 'all persons' language in a premises search warrant" due to a lack of particularity and setting forth majority and minority views on this issue); *United States v. Espinosa*, 827 F.2d 604, 610 (9th Cir. 1987) ("Courts have invalidated warrants that purported to authorize searches of undescribed, unidentified persons at a particular location.").

In addition, the Tenth Circuit has expressly indicated that a warrant may authorize search of a residence as well as a particular person.  *See United States v. Ward*, 682 F.2d 876, 881 (10th Cir. 1982) ("We observe that the Fourth Amendment violation found here may have been readily avoided had the search warrant been drafted to include a search of [the defendant's] person.  [The officer's] affidavit was certainly adequate to establish probable cause for searching both the residence and [the defendant's] person."); *see also Williams v. Kaufman Cty.*, 352 F.3d 994, 1004 (5th Cir. 2003) (reasoning that police needed individualized suspicion to search persons during

---

[12]  Even if "person" were construed to refer only to the person who owned the residence described in each Warrant, officers were also in possession of the Warrant for Jamon's residence at the time they searched his person.

execution of a premises search warrant because, *inter alia*, none of the searched persons were named in the warrant).  Accordingly, the Court finds that the Warrants, which named Jamon as a Defendant and expressly authorized search of "said person," authorized the pat-down search of Jamon's person that was completed by McFadden.[13]

## IV.    Suppression of the Statement

The Statement was made after Jamon was arrested and while Jamon was detained inside Lindell's residence.  However, Jamon has not presented evidence that the Statement was the product of custodial interrogation.  Instead, the Statement was a voluntary utterance by Jamon, which was overheard by an officer.  Therefore, the Statement is not entitled to Fifth Amendment protection. *See United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) ("If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible.").

---

[13]    The Court does not reach the question of whether the search was authorized based on a reasonable suspicion that Jamon was armed and presently dangerous.

17

**V.      Conclusion**

Defendant's Motion to Suppress Evidence and Statements (Doc. 14) is GRANTED IN PART AND DENIED IN PART.  Search of Jamon's vehicle was a warrantless search, and the Government has not met its burden of proving that the search qualifies for any exception to the Fourth Amendment warrant requirement.  Therefore, the motion is granted as to the Cocaine.  Search of Jamon's person was authorized by the Warrants, and the Statement was not the product of custodial interrogation.  Therefore, the motion is denied as to the Cash and the Statement.

IT IS SO ORDERED this 3rd day of September, 2008.

_____
TERENCE KERN
United States District Court

18